UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA

vs.                                    Case Nos.:  3:17cr57/RV/EMT
                                                   3:19cv398/RV/EMT

DONALD SANTORIELLO
_____/

## REPORT AND RECOMMENDATION

This matter is before the court on Defendant's pro se "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody" (ECF No. 56).   The Government filed a response (ECF No. 61), and Defendant filed a reply (ECF No. 62).   The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.   *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b).   After a review of the record and the arguments presented, the undersigned recommends that the section 2255 motion be denied without a hearing because Defendant has not met his burden of showing he is entitled to relief on any of his claims.   *See* Rules 8(a) and (b), Rules Governing Section 2255 Proceedings.

<u>BACKGROUND AND PROCEDURAL HISTORY</u>

On May 16, 2017, Defendant Donald Santoriello was charged in a one-count indictment with possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e) (ECF No. 1).   He was initially represented by Assistant Federal Public Defender Thomas S. Keith, until a potential conflict of interest developed and CJRA counsel Joseph L. Hammons was appointed to represent him (ECF Nos. 18–20).   Mr. Hammons represented Defendant at the district court level and on appeal.

On August 10, 2017, Defendant entered a plea of guilty pursuant to a written plea agreement (ECF Nos. 26–28, 51).   According to the Factual Basis for Guilty Plea (ECF No. 27), Defendant was placed on supervised release on July 26, 2016, after he completed the custodial portion of his sentence for a prior conviction for possession of a firearm by a convicted felon.   That conviction was in the Southern District of Florida, and Defendant's supervision was transferred to this district (*see* Case No. 3:17cr31/RV (N.D. Fla.)).   In March 2017, while Defendant was still on supervised release, his wife advised the United States Probation Office (USPO) that Defendant had a gun in their Pensacola residence.[1]   The USPO notified agents from

---

[1] The Pre-Sentence Investigation Report indicates that Defendant's wife reportedly told the USPO that Defendant became violent after she confronted him about having discovered what she believed to be a package of cocaine in a clothes hamper (ECF No. 38, PSR ¶ 12).   Defendant beat her to

the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF).    When ATF

agents approached Defendant's residence to investigate, he fled.    His wife then

consented to the agents entering the marital home and showed them where

Defendant kept the gun she had reported.    A gun was located and recovered.    An

ATF agent contacted Defendant by telephone the following day, and Defendant said

his DNA would be found on the gun.    Additionally, an unrelated witness advised

ATF agents that after Defendant's release from prison, Defendant showed the

witness a gun that matched the description of the one recovered by ATF agents.

Defendant's Revised Final Presentence Investigation Report (PSR) reflected

a base offense level of 20 (ECF No. 38, PSR ¶ 31).    This level was increased by

four levels because Defendant possessed the firearm in connection with another

felony offense (Defendant's battery of his wife and possession of cocaine) and an

additional two levels for obstructive conduct (Defendant failing to appear,

absconding from supervision, and attempting to persuade his wife to lie to his former

attorney about the ownership of the firearm and to testify falsely in court) (PSR ¶¶

32, 35).    His adjusted base offense level therefore would have been 26 (PSR ¶ 36)

but for application of the Chapter Four, Armed Career Criminal Act (ACCA)

---

the point she needed medical attention, and she feared for her life and safety because of the
handgun at the residence (*id.*).

Case Nos.: 3:17cr57/RV/EMT; 3:19cv398/RV/EMT

enhancement, which increased his offense level to 34 (PSR ¶ 37).    With a total offense level of 34 and a criminal history category of VI, the applicable sentencing guidelines range was 262 to 327 months.[2]    Prior to sentencing, Attorney Hammons objected to the ACCA enhancement, and the Government objected to a three-point reduction for acceptance of responsibility (PSR ¶¶ 129–49).    The USPO agreed with the Government's position on acceptance and thus awarded no reduction (PSR ¶¶ 134, 38–39).    Attorney Hammons, however, maintained Defendant was entitled to a two-level reduction for acceptance of responsibility (PSR ¶ 133).

At sentencing, the court confirmed Defendant's agreement with the factual accuracy of the PSR before addressing the objections (ECF No. 49 at 3).    The three convictions used to support the ACCA enhancement were for first-degree robbery in New York and aggravated assault and second-degree murder in Florida (PSR ¶¶ 47, 50, 52, respectively).    The court found that the first two offenses undoubtedly qualified as crimes of violence and were valid ACCA predicates (ECF No. 49 at 3–5).    Despite some confusion regarding the factual circumstances underlying the third offense, second-degree murder, the court found it qualified as an additional predicate offense and thus overruled the objection as to application of the ACCA

---

[2] The PSR erroneously reflects the guidelines imprisonment range as 210 to 262 months (PSR ¶ 105).    This range became the correct range once the court sustained Defendant's objection at sentencing and awarded him a two-level acceptance of responsibility adjustment, resulting in a total offense level of 32 (ECF No. 49 at 19–20).

enhancement (*id.* at 5–15).    The court sustained the defense objection to the failure to award a two-point reduction for acceptance of responsibility (*id.* at 16–17).    The court noted that whether to award the third point reduction for acceptance of responsibility was the Government's decision and the could not "do anything about it" (*id.* at 19).

The court sentenced Defendant to a term of 200-months imprisonment, which was slightly below the applicable guidelines range, after taking into consideration Defendant's age and other factors, including uncertainty about the applicability of the ACCA enhancement (ECF Nos. 39, 40; ECF No. 49 at 23).    The court ordered the sentence to run consecutive to the "yet-to-be-imposed" sentence in the case involving Defendant's violation of supervised release (ECF No. 49 at 23).[3]

Defendant appealed application of the ACCA enhancement, claiming none of the three underlying convictions counted by the district court qualified as a violent felony (ECF No. 54 at 2).    The Eleventh Circuit disagreed.    The court first noted that binding precedent foreclosed Defendant's arguments regarding the convictions for second degree murder and aggravated assault (*id.* at 2–3 (citing *United States v. Jones*, 906 F.3d 1325, 1329 (11th Cir. 2018) (second-degree murder) and *Turner v.*

---

[3]  The Court sentenced Defendant to 24-months imprisonment in Case No. 3:17cr31/RV, the case in which Defendant's supervision was transferred to this district from the Southern District of Florida.

Case Nos.: 3:17cr57/RV/EMT; 3:19cv398/RV/EMT

*Warden Coleman, F.C.I.,* 709 F.3d 1328, 1338 (11th Cir. 2013) (aggravated assault)).[4]    With respect to Defendant's New York conviction for first-degree robbery, the court concluded, applying the modified categorical approach, that Defendant was convicted under the portion of the statute requiring proof of "force capable of causing physical pain or injury to another person" and proof that "serious physical injury" resulted from the robbery (ECF No. 54 at 5).[5]    Therefore, based on the facts as set forth in the PSR, this offense also constituted a valid ACCA predicate (*id.* at 4–5).    The Eleventh Circuit thus affirmed Defendant's sentence. *United States v. Santoriello*, 756 F. App'x 886 (11th Cir. 2018).

In the present motion, Defendant asserts five grounds for relief.    He raises four separate claims of ineffective assistance of counsel and a fifth claim challenging his competency.    The Government opposes the motion in its entirety.    In his reply, Defendant does not refute or rebut the Government's position regarding the merits of his claims; instead, he makes an additional, new argument as to one of the grounds

---

[4] *Turner* was abrogated in part on other grounds by *Johnson v. United States*, 576 U.S. 591 (2015). *See United States v. Edwards*, 833 F. App'x 323, 325 (11th Cir. 2020).

[5] A divisible statute—that is, one that sets out one or more elements of the offense in the alternative—is analyzed using a modified categorical approach.    This means the court may consider a certain limited class of documents to determine which portion of the statute the defendant violated. *See United States v. Davis*, 875 F.3d 592, 597 (11th Cir. 2017).

for relief.    The court will address each of Defendant's claims, including those that

may have been abandoned.

<u>ANALYSIS</u>

<u>General Standard of Review</u>

"Section 2255 does not provide a remedy for every alleged error in conviction

and sentencing."    *Spencer v. United States*, 773 F.3d 1132, 1138 (11th Cir. 2014).

A prisoner is entitled to relief under section 2255 if the court imposed a sentence

that (1) violated the Constitution or laws of the United States, (2) exceeded its

jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise

subject to collateral attack.    *See* 28 U.S.C. § 2255(a); *McKay v. United States*, 657

F.3d 1190, 1194 n.8 (11th Cir. 2011).

There are limitations on the issues that may be raised in a section 2255 motion.

For instance, the law is well established that a district court need not reconsider

issues raised in a section 2255 motion that have been resolved on direct appeal.

*Stoufflet v. United States*, 757 F.3d 1236, 1239 (11th Cir. 2014); *Rozier v. United

States*, 701 F.3d 681, 684 (11th Cir. 2012); *United States v. Nyhuis*, 211 F.3d 1340,

1343 (11th Cir. 2000); *Mills v. United States*, 36 F.3d 1052, 1056 (11th Cir. 1994).

Once a matter has been decided adversely to a defendant on direct appeal, therefore,

it cannot be re-litigated in a collateral attack under section 2255.    *Nyhuis*, 211 F.3d

at 1343 (quotations omitted). Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised. *Sanders v. United States*, 373 U.S. 1, 16 (1963) ("identical grounds may often be proved by different factual allegations . . . or supported by different legal arguments . . . or couched in different language . . . or vary in immaterial respects").

Additionally, "[u]nder the procedural default rule, a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding." *Lynn v. United States*, 365 F.3d 1225, 1234 (11th Cir. 2004). An issue is "'available' on direct appeal when its merits can be reviewed without further factual development." *Id.* at 1232 n.14 (quoting *Mills*, 36 F.3d at 1055). Absent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a section 2255 motion unless the defendant establishes (1) cause for not raising the ground on direct appeal, and (2) actual prejudice resulting from the alleged error—that is, alternatively, that he is "actually innocent." *Lynn*, 365 F.3d at 1234; *Bousley v. United States*, 523 U.S. 614, 622 (1998) (citations omitted). To show cause for procedural default, a defendant must show that "some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to

[defendant's] own conduct." *Lynn*, 365 F.3d at 1235.    A meritorious claim of ineffective assistance of counsel can constitute cause.    *See Nyhuis*, 211 F.3d at 1344.

To prevail on a claim of ineffective assistance of counsel, a defendant must show (1) his attorney's representation fell below "an objective standard of reasonableness," and (2) a reasonable probability exists that, but for counsel's unprofessional conduct, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).    "The burden of persuasion is on a section 2255 petitioner to prove, by a preponderance of the competent evidence, both that counsel's performance was unreasonable, and that [ ]he was prejudiced by that performance."    *Demar v. United States*, 228 F. App'x 940, 950 (11th Cir. 2007) (quotations, brackets, and citations omitted).[6]    In applying *Strickland*, the court may dispose of an ineffective assistance claim if a petitioner fails to carry his burden on either of the two prongs.    *Strickland*, 466 U.S. at 697; *Brown v. United States*, 720 F.3d 1316, 1326 (11th Cir. 2013); *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000) ("[T]he court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.").

---

[6] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority."    11th Cir. R. 36-2.

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688; *see also Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007). Reviewing courts "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689; *see also Chandler v. United States*, 218 F.3d 1305, 1315–16 (11th Cir. 2000) (discussing presumption of reasonableness of counsel's conduct); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation"). Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight. *Strickland*, 466 U.S. at 689. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); *Chandler*, 218 F.3d at 1315. When reviewing the performance of experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger because "[e]xperience is due some respect." *Chandler*, 218 F.3d at 1316 n.18.

To establish prejudice, a defendant must show that, but for counsel's deficient performance, the outcome of the proceeding would have been different.

*Strickland*, 466 U.S. at 694.    "The likelihood of a different result must be substantial, not just conceivable."    *Harrington v. Richter*, 562 U.S. 86, 112 (2011) (quoting *Strickland*).    For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him."    *Lockhart v. Fretwell*, 506 U.S. 364, 369–70 (1993); *Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 754 (11th Cir. 2010).    In the case of alleged sentencing errors, a defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level.    *Glover v. United States*, 531 U.S. 198, 203–04 (2001).    A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance."    *Id.* at 203.    To demonstrate prejudice in the context of an appeal, the arguments the defendant alleges his counsel failed to raise must have been significant enough to have affected the outcome of the appeal.    *Miller v. Dugger*, 858 F.2d 1536, 1538 (11th Cir. 1988).

As noted previously, it is a defendant's burden to provide factual support for his contentions regarding counsel's performance.    *See Smith v. White*, 815 F.2d 1401, 1406–07 (11th Cir. 1987).    Bare, conclusory allegations of ineffective

assistance are insufficient to satisfy the *Strickland* test.    *See Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1333–34 (11th Cir. 2012); *Dale v. United States*, 809 F. App'x 727, 728 (11th Cir. 2020) (citing *Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992)); *Stano v. Dugger*, 901 F.2d 898, 899 (11th Cir. 1990) (citing *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)).    A defendant must identify the errors or omissions of which he complains and explain how they affected the outcome of the proceedings.    *Boyd*, 697 F.3d at 1333.    Furthermore, counsel is not constitutionally deficient for failing to preserve or argue a meritless claim.    *Hollis v. United States,* 958 F.3d 1120, 1124 (11th Cir. 2020); *Denson v. United States*, 804 F.3d 1339, 1342 (11th Cir. 2015) (citing *Freeman v. Att'y Gen., Fla.*, 536 F.3d 1225, 1233 (11th Cir. 2008)).    This is true regardless of whether the issue is a trial or sentencing issue.    *See, e.g.*, *Hollis,* 958 F.3d at 1124 (counsel not constitutionally ineffective for failing to raise meritless objection to use of prior drug convictions as predicate offenses under ACCA); *Sneed v. Fla. Dep't of Corr.*, 496 F. App'x 20, 27 (11th Cir. 2012) (failure to preserve meritless *Batson* claim not ineffective assistance of counsel); *Lattimore v. United States*, 345 F. App'x 506, 508 (11th Cir. 2009) (counsel not ineffective for failing to make a meritless objection to an obstruction enhancement); *Brownlee v. Haley*, 306 F.3d 1043, 1066 (11th Cir. 2002) (counsel was not ineffective for failing to raise issues clearly lacking in merit); *Chandler v.*

*Moore*, 240 F.3d 907, 917 (11th Cir. 2001) (counsel not ineffective for failing to object to "innocuous" statements by prosecutor or accurate statements by prosecutor about effect of potential sentence).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between." *Chandler*, 218 F.3d at 1313.   This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted.   *Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007); *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000).   Lawyers in every case could have done something more or different, and the issue is not what is possible, but only what is constitutionally compelled.   *Chandler*, 218 F.3d at 1313.   "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'"   *Dingle*, 480 F.3d at 1099 (quoting *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983)).   Regardless of how the standard is framed, under the prevailing case law, it is abundantly clear that a moving defendant has a high hurdle to overcome to establish a violation of his constitutional rights based on

his attorney's performance.    A defendant's belief that a certain course of action that counsel failed to take might have helped his case does not direct a finding that counsel was *constitutionally ineffective* under the standards set forth above.

An evidentiary hearing is unnecessary when "the motion and files and records conclusively show that the prisoner is entitled to no relief."    *See* 28 U.S.C. § 2255(b); *Rosin v. United States*, 786 F.3d 873, 877 (11th Cir. 2015); *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008).    Not every claim of ineffective assistance of counsel warrants an evidentiary hearing.    *Gordon*, 518 F.3d at 1301 (citing *Vick v. United States*, 730 F.2d 707, 708 (11th Cir. 1984)).    To be entitled to a hearing, a defendant must allege facts that, if true, would prove he is entitled to relief.    *See Hernandez v. United States*, 778 F.3d 1230, 1234 (11th Cir. 2015).    A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record. *See Winthrop-Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014) (explaining that "a district court need not hold a hearing if the allegations [in a section 2255 motion] are . . . based upon unsupported generalizations") (internal quotations omitted); *Peoples v. Campbell*, 377 F.3d 1208, 1237 (11th Cir. 2004). Even affidavits that amount to nothing more than conclusory allegations do not

warrant a hearing.   *Lynn*, 365 F.3d at 1239.   Finally, disputes involving purely

legal issues can be resolved by the court on the written record.

Ground One

Defendant first claims counsel was constitutionally ineffective in failing to

argue that the residual clause of 18 U.S.C. § 924(e)(2) is void for vagueness under

*Johnson v. United States*, 576 U.S. 591 (2015), and *Welch v. United States*, 136 S.

Ct. 1257 (2016).   Defendant's claim is premised on an assumption that he was

sentenced under the residual clause of section 924(e)(2); Defendant, however, is

mistaken in that regard.   The Eleventh Circuit found that each of Defendant's three

ACCA predicate convictions qualified as such under the *elements clause* of section

924(e), not the residual clause.   *Santoriello*, 756 F. App'x at 888.   Therefore,

counsel was not constitutionally ineffective for failing to raise the argument.

*Hollis,* 958 F.3d at 1124; *Brownlee*, 306 F.3d 1066; *Chandler*, 240 F.3d at 917.

Ground Two

Defendant raises two related subclaims in Ground Two.   He contends

counsel was constitutionally ineffective in not challenging the district court's failure

to "compel" the Government to move for an additional one-point reduction in

Defendant's offense level for acceptance of responsibility (ECF No. 56 at 7).

Defendant also alleges he was "induced" to plead guilty because counsel told him

he would receive a three-level reduction for acceptance of responsibility and that the prosecutor, court, and his attorney "conspired to breach the plea agreement" by not compelling the Government to move for the additional one-level reduction (*id.* at 8).

Section 3E1.1 of the Sentencing Guidelines provides for up to a three-level downward adjustment in a defendant's offense level if the defendant accepts responsibility for the offense conduct.    A two-level adjustment is awarded if the defendant "clearly demonstrates acceptance of responsibility"—frequently, but not always—by entering a guilty plea.    U.S.S.G. § 3E1.1(a).    An additional one-point reduction may be granted:

> *upon motion of the Government* stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Government and the court to allocate their resources efficiently.

U.S.S.G. § 3E1.1(b) (emphasis added).    As the Application Notes to section 3E1.1 provide, the Government is in the best position to determine whether a defendant has assisted authorities in a manner that avoids preparing for trial, and the Notes make clear that the adjustment "may only be granted upon a formal motion by the Government at the time of sentencing."    U.S.S.G. § 3E1.1 cmt. n.6; *see also United States v. Johnson*, 980 F.3d 1364, 1381 (11th Cir. 2020) (finding no plain error in district court's failure to sua sponte require the Government to move for the

additional one-level reduction); *United States v. Alonge*, 822 F. App'x 901, 903 (11th Cir. 2020) (noting the additional one-level decrease requires a Government motion); *United States v. Wade*, 458 F.3d 1273, 1282 (11th Cir. 2006) (same).

Although defendants who plead guilty usually receive the full three-level reduction, there is no authority for Defendant's assertion that the district court had the authority to compel the Government to move for the additional point, a fact the district court recognized in this case.   At sentencing, Defendant's counsel argued he was entitled to the additional one-point reduction for acceptance of responsibility. In turn, the court asked the Government to explain why it did not consider Defendant's plea to have been timely and why it was not recommending the additional one-point reduction (ECF No. 49 at 17–18).   After the Government responded, the court noted that Defendant's plea had been timely in accordance with the court's own deadline and stated to the Government, "Well, it's your decision, and you may have to defend that before the Eleventh Circuit, but I can't do anything about it." (*id.* at 19).   As explained above, the court could not compel the Government to make the motion, and counsel was not ineffective for failing to challenge the court's conclusion on the matter.   *Brownlee*, 306 F.3d at 1066.

Continuing, Defendant asserts there was "a reasonable probability that, but for Counsel's errors, [he] would not have pleaded guilty and would have insisted on

going to trial by using an Insanity defense to the crime" (ECF No. 56 at 8). Defendant's assertion is belied by the plea colloquy, during which Defendant made sworn statements that contradict any contention that he relied on an expectation about his sentence or guidelines range in deciding to enter a guilty plea (*see* ECF No. 51 at 12–15). Defendant claims, *in his reply*, that it was not his intention to make a claim of ineffective assistance of trial counsel but instead intended to assert a claim of ineffective assistance of appellate counsel based on appellate counsel's failure to claim error with respect to denial of the additional one-point reduction for acceptance of responsibility (ECF No. 62 at 3). Defendant claims it is "inconceivable" he would have made a claim against trial counsel on this issue, although this is, in fact, exactly what he did (*id*. at 4).

Because Defendant did not raise the issue of ineffective assistance of appellate counsel in his section 2255 motion, the issue is deemed waived. *See, e.g., McKiver v. Sec'y Fla. Dep't of Corr.,* 991 F.3d 1357, 1364 n.1 (11th Cir. 2021) (arguments raised for the first time in a party's reply brief are waived); *United States v. Herget,* 585 F. App'x 948, 950 (10th Cir. 2014) (ineffective assistance of trial counsel claim presented for the first time in section 2255 reply waived); *United States v. Cervantes*, 132 F.3d 1106, 1111 (5th Cir. 1998) (district court does not abuse its discretion in refusing to consider new issues raised in a section 2255 reply brief after the

government filed its response ) (citations omitted); *Wallace v. United States*, Civ.
Case Nos. 8:13cv2262-T-24MAP, 8:11cr287-T-24MAP, 2014 WL 12605465, at *5
(M.D. Fla. Jan. 13, 2014) (finding that because petitioner did not raise ineffective
assistance of appellate counsel in his section 2255 petition and, instead, raised it for
the first time in his reply, it was deemed waived and not cognizable on collateral
review) (citing *United States v. Otalvora,* Nos. 93CR096, 95C0157, 1995 WL
151768, at *1 (N.D. Ill. Apr. 4, 1995) (arguments presented for the first time in a
section 2255 reply brief are waived)); *see also United States v. Magluta*, 418 F.3d
1166, 1185–86 (11th Cir. 2005) (in the context of a direct appeal, issues not raised
until the reply brief will not be considered); *Cacoperdo v. Demosthenes*, 37 F.3d
504, 507 (9th Cir. 1994) (in the context of habeas petition filed under section 2254,
a traverse is not the proper pleading to raise additional grounds for relief, as state is
not properly advised of additional claims and thus is unable to answer).    Indeed,
Rule 2(b)(1) of the Rules Governing Section 2255 Proceedings provides that the
section 2255 motion must "specify all the grounds for relief available to the moving
party."    *Id.*    Accordingly, Defendant's claim of ineffective assistance of appellate
counsel is waived and is not cognizable for purposes of his section 2255 motion.

     Even if the court were to find that the issue was not waived, Defendant has
not established entitlement to relief.    Put simply, the outcome of the proceedings

ultimately would not have been different had appellate counsel raised this issue. Due process of law requires that a defendant receive effective assistance of appellate counsel on direct appeal. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). To prevail on a claim for ineffective assistance of appellate counsel, a defendant must show that (1) appellate counsel's performance was deficient, and (2) but for counsel's deficient performance, he would have prevailed on appeal. *Padgett v. United States,* 791 F. App'x 51, 55 (11th Cir. 2019) (quoting *Shere v. Sec'y Fla. Dep't of Corr.*, 537 F.3d 1304, 1310 (11th Cir. 2008)); *see also Philmore v. McNeil*, 575 F.3d 1251, 1264 (11th Cir. 2009) (holding that claims of ineffective assistance of appellate counsel are governed by the same standards applied to trial counsel under *Strickland*). The Sixth Amendment does not require appellate advocates to raise every non-frivolous issue on appeal if counsel, as a matter of professional judgment, decides not to do so. *Davila v. Davis*, 137 S. Ct. 2058, 2067 (2017) (citing *Smith v. Murray*, 477 U.S. 527, 536 (1986); *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983)). It is possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim, but it is difficult to demonstrate in such a situation that counsel's performance was constitutionally ineffective. *Davila*, 137 S. Ct. at 2067("Declining to raise a claim on appeal . . . is not deficient performance unless that claim was plainly stronger than those actually presented to the appellate court." (citing *Smith v. Robbins*, 528

U.S. 259, 287–88 (2000)); *see also Payne v. United States*, 566 F.3d 1276, 1277 (11th Cir. 2009) (citing *Smith*).    "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Barnes,* 463 U.S. at 751–52.    In fact, this is the "hallmark of effective appellate advocacy."    *Murray*, 477 U.S. at 536.    The mere fact that one of the non-appealed issues might have been successful does not preclude a finding that counsel's performance, which must be judged in its entirety, was effective.    *Id*.; *Heath v. Jones*, 941 F.2d 1126, 1131 (11th Cir. 1991) (counsel's appellate advocacy must be judged in its entirety); *Reutter v. Sec'y for Dep't of Corr.*, 232 F. App'x 914, 917 (11th Cir. 2007) (citing *Heath*).

In this case, appellate counsel argued that the ACCA enhancement was improperly applied because none of the three underlying offenses was a proper predicate.    The ACCA challenge was a strong appellate issue with the potential to significantly impact Defendant's sentence.    To be sure, at sentencing the district court did not hesitate to acknowledge "uncertainty" with respect to the ACCA enhancement (ECF No. 49 at 23)—in the absence of which, Defendant would have faced a statutory *maximum* of ten years rather than a statutory *minimum* of 15 years.

That said, Defendant's belief that the one-point acceptance of responsibility adjustment was a viable appellate issue is understandable, particularly given the sentencing court's pointed comment to the Government about potentially having to defend its position on appeal (*id.* at 19).   Nonetheless, under the authority cited above, this does not direct a conclusion that appellate counsel was constitutionally ineffective for failing to raise the issue.   Defendant correctly calculates that with the additional one-point reduction, his guidelines range would have been 188 to 235 months.   Putting aside the fact that the additional one-point reduction could not be awarded absent a motion by the Government, Defendant's 210-month sentence was within the range that would have applied had the reduction been awarded.   And the record contains no indication that the district court would have been inclined to impose a lesser sentence had the additional one-level adjustment been applied. Defendant thus has not met his burden of showing he is entitled to relief on this claim.

Ground Three

Defendant contends trial counsel was constitutionally ineffective because he failed to argue during the plea colloquy and at sentencing that it is "illegal" to impose an increased sentence under ACCA's residual clause.   As noted above with respect to Ground One, both the trial court and the appellate court found that Defendant's

three prior ACCA predicates qualified as such under the elements clause of the ACCA, not the residual clause.   Therefore, counsel was not constitutionally ineffective in failing to raise the issue.   *Hollis*, 958 F.3d at 1124; *Brownlee*, 306 F.3d at 1066; *Chandler*, 240 F.3d at 917.

    Ground Four

    Defendant next contends trial counsel performed deficiently under *Strickland* because counsel did not "properly" argue that his second-degree murder conviction was not a qualifying ACCA predicate.   Defendant explains that he was originally charged with first degree murder in violation of Fla. Stat. § 782.04(1), but he entered a plea to second-degree murder in violation of section 782.04(2).[7]   He now appears to claim that this conviction was reclassified as a "reckless" homicide with no criminal intent to physically harm the victim (ECF No. 56 at 13).   Defendant maintains that his crime, with the mens rea of negligence or recklessness, did not trigger the enhanced penalties mandated by the ACCA (*id.* at 14).   Defendant cites

---

[7] Section 782.04(2) provides in relevant part:

> The unlawful killing of a human being, when perpetrated by any act imminently dangerous to another and evincing a depraved mind regardless of human life, although without any premeditated design to effect the death of any particular individual, is murder in the second degree

Fla. Stat. § 782.04(2).

two United States Supreme Court cases in support of his position, neither of which mentions recklessness or negligence or is relevant to his position: *Shepard v. United States*, 544 U.S. 13, 26 (2005) (holding that a sentencing court is limited to reviewing certain judicial records to determine whether a plea of guilty to a crime defined by a non-generic statute necessarily admitted elements of the generic offense) and *Chambers v. United States*, 555 U.S. 122 (2009) (holding that failure to report for penal confinement is not a "violent felony").   The third case Defendant cites, *United States v. Smith*, 544 F.3d 781 (7th Cir. 2008), concluded that a felony conviction for "criminal recklessness" under Indiana law was not a violent felony under the ACCA.   Such a conviction in Indiana, which requires only an act that "creates a substantial risk of bodily injury" or is "hazing," is undoubtedly qualitatively different than a Florida conviction for second degree murder.   *See id.* at 783.

In any event, Defendant's arguments are defeated by the Eleventh Circuit's ruling on direct appeal.   The appellate court expressly found that Florida second-degree murder categorically qualifies as a violent felony under the elements clause of the ACCA.   *Santoriello,* 756 F. App'x at 888 (citing *United States v. Jones*, 906 F.3d 1325, 1329 (11th Cir. 2018)).   The *Jones* court noted that indirect physical force—through the use of poison, drugs, or other means—still qualifies as physical

force under the ACCA elements clause.    *Jones*, 906 F.3d at 1329.    Thus, any challenge to the use of Defendant's second-degree murder conviction as an ACCA predicate would have been unsuccessful, and counsel was not constitutionally ineffective for failing to raise such a challenge.

Ground Five

Defendant's last claim is that counsel "coerced" him into entering an involuntary plea while Defendant was suffering from mental illnesses that rendered him incompetent to stand trial or be sentenced (ECF No. 56 at 16).    Defendant also claims he had a defense to the crime because he was insane at the time it was committed, was suffering from paranoid schizophrenia and bi-polar disorder, did not know right from wrong, and was not in a sound mind at the time he possessed the firearm, claiming his "Post-traumatic stress disorder, the combined organic delusional disorder, substance abuse disorder and bi-polar disorder in his behavior at the time of the crimes extreme emotional and mental disturbances diminished his capacity to conform his conduct to the requirements of the law" (ECF No. 56 at 16). Defendant's claims are procedurally barred and bereft of record support.

First, Defendant's claim that his plea was coerced is waived because he did not raise it on direct appeal.    *See Bousley*, 523 U.S. at 621 ("even the voluntariness

and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct appeal.").

To the extent the claim is construed as one alleging counsel was constitutionally ineffective for failing to inquire into Defendant's competency or the availability of a mental health defense, the claim fails.   A defendant is not fit to stand trial if he is "suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense."   *United States v. Bradley*, 644 F.3d 1213 1267–68 (11th Cir. 2011) (quoting 18 U.S.C. § 4241(a)). In order to be found competent to stand trial, a defendant must have "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and "a rational as well as factual understanding of the proceedings against him."   *Bradley*, 644 F.3d at 1268 (quoting *United States v. Hogan*, 986 F. 2d 1364, 1371 (11th Cir. 1993)).

A petitioner may make a procedural competency claim by alleging that the trial court failed to hold a competency hearing after the defendant's mental competence was put at issue.   *Medina v. Singletary*, 59 F.3d 1095, 1106 (11th Cir. 1995) (citing *Pate v. Robinson*, 383 U.S. 375, 385 (1966)).   The petitioner must show that the judge "ignored facts raising a 'bona fide doubt' regarding [his]

competency to stand trial." *Medina*, 59 F.3d at 1106 (quoting *James v. Singletary*, 957 F. 2d 1562, 1572 n.15 (citing *Fallada v. Dugger*, 819 F. 2d 1564, 1568 (11th Cir. 1987)). A procedural competency claim must be raised on direct appeal because the appellate court "may consider only the information before the trial court before and during trial." *Medina*, 59 F.3d at 1106 (quoting *James*, 957 F.2d at 1572).

In a substantive competency claim, a petitioner alleges "he was, in fact, tried and convicted while mentally incompetent." *Medina*, 59 F.3d at 1106 (quoting *James*, 957 F.2d at 1571). A habeas petitioner raising a substantive claim of incompetency "is entitled to no presumption of incompetency and must demonstrate his or her incompetency by a preponderance of the evidence." *Bradley*, 644 F.3d at 1268 (quoting *Medina*, 59 F.3d at 1106    (citations and quotations omitted)). To be entitled to a hearing, a habeas petitioner must present "clear and convincing evidence creating a real, substantial and legitimate doubt [about] his competence to stand trial." *Medina*, 59 F.3d at 1106 (citation omitted).

Defendant has not met this burden. The record does not support a finding of incompetency, much less that Defendant did not understand the nature and consequences of the proceedings or that he was unable to assist in his own defense. As noted by the Government, Defendant's answers during the district court's plea

colloquy were complete, appropriate, and accurate.    Defendant informed the court that he had never been treated for any kind of mental illness and was not taking any medication that impaired his thinking in any way (ECF No. 51 at 4–5).    The court, after having observed and interacted with Defendant throughout the colloquy, stated "I find that you're alert and intelligent and you certainly understand the nature of this charge, and you realize and appreciate the consequences of a plea of guilty to it" (*id.* at 15).

The information contained in the PSR also is relevant.    The PSR sets forth a lengthy and detailed account of Defendant's medical history, mental and emotional health, substance abuse, family, and education and employment history, making clear that Defendant was able to meaningfully assist the probation officer in collecting and recounting the necessary information.    Defendant's current claims of mental health issues unrelated to substance abuse are not substantiated by the PSR (ECF No. 38, PSR ¶¶ 80–88).    Nothing in the narrative sections of the PSR concerning Defendant's mental and emotional health or history of substance abuse would have placed the court or counsel on notice that inquiry into Defendant's competency was warranted.    To the contrary, the narrative description of the offense conduct indicated that Defendant fled from his residence when law enforcement approached; that in a telephone conversation, Defendant asked if he

was "in trouble"; and that Defendant was trying to hide from law enforcement at the time of his arrest (PSR ¶¶ 12, 15, 21)—each of which indicates a "guilty conscience" or an appreciation for the unlawfulness of his behavior.    Furthermore, although Defendant claimed to have forgotten about the firearm until his release, he did not deny knowing it was unlawful for him to possess a firearm (PSR ¶ 18).

Defendant's statements at sentencing also do not evidence confusion or incompetency.    Defendant stated:

> I'd like to apologize to the courts and to my family and to my wife, my entire family, who is well aware of everything that's going on and just hoping and praying that—the good Lord willing that I'll still be able to have enough time left in my life to be somewhat productive in some place, some time, be able to do it under my own feet.    That's all, Your Honor.

(ECF No. 49 at 20–21.)

In sum, the record taken as a whole reveals no basis on which to find Defendant's trial counsel should have raised the issue of Defendant's competency or sanity at the time of the offense.    Neither Defendant's conclusory allegation that he was "insane at the time of the crime" and "did not know right from wrong" nor his claim that he was incompetent when he pled guilty and during the sentencing hearings is credible (ECF No. 56 at 16–17).    Counsel thus was not constitutionally ineffective for failing to raise the issuesr.    *See Hollis*, 958 F.3d at 1124; *Brownlee*,

306 F.3d at 1066; *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992) (no ineffective assistance of counsel for failing to preserve or argue meritless issue).

CONCLUSION

For the reasons set forth above, the court finds that Defendant has failed to show that any of the claims raised in his motion to vacate, set aside, or correct sentence have merit.   Nor has Defendant shown that an evidentiary hearing is warranted.   Defendant's section 2255 motion therefore should be denied in its entirety.

CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2255 Proceedings provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."   A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.   Rule 11(b), Rules Governing Section 2255 Cases.

After review of the record, the court finds no substantial showing of the denial of a constitutional right.   28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000) (explaining how to satisfy this showing) (citation omitted).   It thus

also is recommended that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."   If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully **RECOMMENDED**:

1.     That the Motion to Vacate, Set Aside, or Correct Sentence (ECF No. 56) be **DENIED**.

2.     That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 8<u>th</u> day of July 2021.


*/s/ Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation. **Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.** An objecting party must serve a copy of its objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.